CITY OF COMANCHE v. HOFF & HARRIS.
(No. 8001.)

(Court of Civil Appeals of Texas. Ft. Worth. June 20, 1914.)

1. PLEADING (§ 18*)—SUPPLEMENTAL PETITION—SUFFICIENCY.

A contract, which bound plaintiffs to furnish the defendant city with water, required the city to compel water users to install meters and to maintain all meters in repair. It further obligated plaintiffs to maintain the water in the reservoir at a certain level, unavoidable accident excepted, under pain of daily penalties. In an action on the contract the city set up plaintiff's failure to maintain the water at the required level, and plaintiffs by supplemental petition asserted that it was by reason of the city's failure to require city water users to install meters and to maintain them in working order. Held, that the supplemental petition was not bad because it failed to name those users of water who had not installed meters or whose meters were not in repair;

such information ·having been obtained from the city's own books.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 39, 64; Dec. Dig. § 18.*]

**2. PLEADING (§ 18*)—SUPPLEMENTAL PETITION—SUFFICIENCY.**

Nor was the supplemental petition, which asserted that the failure to maintain the water at the required level was due to unavoidable accident in the breaking down of the pumping engines, bad because it did not specifically set forth the nature of the breakdown; plaintiff not being bound to plead evidence.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 39, 64; Dec. Dig. § 18.*]

**3. APPEAL AND ERROR (§ 197*)—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—MOTION FOR CONTINUANCE.**

Though the city because of the indefiniteness of the petition was surprised by the introduction of evidence of the names of those water users who had not installed meters or whose meters were out of repair, it cannot complain on appeal of the reception of such evidence, where it did not withdraw its announcement of ready for trial, so as to obtain time to prepare to rebut the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1428–1441; Dec. Dig. § 197.*]

**4. WITNESSES (§ 398*)—IMPEACHMENT.**

Where the manager of an oilmill testified that, during part of the time it was claimed that plaintiff failed to maintain the water at the required level, the oilmill had no connection with the water system, evidence that a few years before it was ascertained that the oilmill did have connection with the water system, although there was no meter, was admissible to affect the credibility of the manager and the weight to be given his testimony.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1267, 1274, 1275; Dec. Dig. § 398.*]

**5. WATERS AND WATER COURSES (§ 203*)—PUBLIC SUPPLY—INSTALLATION OF METERS.**

The evidence is also admissible to show that the city failed to compel known water users to install meters.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 289, 290–299; Dec. Dig. § 203.*]

**6. APPEAL AND ERROR (§ 1031*)—REVIEW—HARMLESS ERROR.**

Objections to the charge or refusal of a special charge will be considered harmless where unsupported by the statement of any evidence tending to show probable injury from the rulings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4038–4046; Dec. Dig. § 1031.*]

**7. NEW TRIAL (§ 102*)—NEWLY DISCOVERED EVIDENCE.**

Where a contract for the furnishing of a city with water required the city to compel water users to install meters and keep them in working order, and provided for daily penalties in the case of the plaintiffs' failure to maintain water in the reservoir to a certain depth, and plaintiffs excused their failure to keep the water at the stipulated depth by showing that the city did not require all users of water to install meters or keep them in repair, the city cannot after an adverse verdict, obtain a new trial for newly discovered evidence that a large part of the persons shown by its own books to be without meters were in fact supplied with meters, and that they did not waste water because they were not so supplied, for, the information being at all times in the books of the

city, it should by diligence have discovered such facts before trial or have asked for a postponement to ascertain them.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 207, 210–214; Dec. Dig. § 102.*]

**8. NEW TRIAL (§ 108*)—NEWLY DISCOVERED EVIDENCE—WEIGHT OF EVIDENCE.**

Testimony by the users of water that they did not waste water because they were not supplied with meters being of such an extremely uncertain and inconclusive character, a new trial should not be granted for newly discovered evidence to that effect.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 226, 227; Dec. Dig. § 108.*]

**9. CONTRACTS (§ 173*)—CONSTRUCTION.**

Where a contract for the furnishing of a city with water required the city to compel all users of water to install water meters, and to keep the meters in repair and at the same time imposed upon plaintiffs penalties in case of their failure to maintain a depth of four feet of water in the reservoir, the two duties are interdependent, and the city, having failed to compel water users to install meters and to keep meters installed in repair, cannot insist on the penalties because the water at times was slightly below four feet.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 762–764; Dec. Dig. § 173.*]

Appeal from District Court, Comanche County; J. H. Arnold, Judge.

Action by Hoff & Harris against the City of Comanche. From a judgment for plaintiff, defendant· appeals. Affirmed.

Callaway & Callaway, of Comanche, for appellant. Goodson & Goodson, of Comanche, for appellee.

CONNER, C. J. On the 31st day of January, 1912, the city of Comanche and Hoff & Harris entered into a contract, by virtue of which, among other things, Hoff & Harris agreed to furnish to the city water for the period of five years at specified rates per month which the city in turn agreed to pay. Paragraphs 5 and 6 of the contract bound the city to maintain its then charge for the use of its water, and to "compel all who use water to install meters and to keep all meters in repair." Paragraph 8 of the contract bound Hoff & Harris to maintain water in the city reservoir "to a depth of at least four feet at all times," and in event they should fail to do so, "to forfeit to the said city" the sum of $5 for the first day and $10 for each succeeding day, or fraction thereof, that Hoff & Harris should fail to so maintain the supply of water. "Unavoidable accident" was excepted, and it was provided that the forfeitures might be deducted by the city from the payments required of it under the contract. This suit was instituted by Hoff & Harris to recover a balance of $744.50 alleged to be due under the contract. The city pleaded, among other things, that for a number of periods specified the plaintiffs had failed to maintain water in its reservoir as they had agreed to do, and that by reason thereof the city had declared and retained the forfeitures as specified in

the contract, which in all amounted to the sum sued for. To this plea the plaintiffs replied, in substance, admitting the failures set out by the city, but alleging that at all times water sufficient for the use of the inhabitants of the city had been supplied, and that the failures complained of were occasioned by unavoidable accident and as a consequence of a failure of the city to compel a large number of its water users to install meters and to keep the meters in use in repair. A trial before a jury resulted in' a verdict for the plaintiffs for $684.50, and the city has appealed.

Numerous assignments of error are presented to which there are numerous objections, but we have concluded to dispose of the case in a general way without undertaking to specifically dispose of each assignment, proposition, and exception thereto.

[1, 2] We find no reversible error in the court's action in overruling appellant's special exception to appellees' supplemental petition, charging that the forfeitures claimed were brought about principally because of the city's failure to require water users to install meters and to keep meters that they did install in running order. The exception was based mainly upon the failure of the plaintiffs to name the water users who had not installed meters and to name those maintaining meters out of repair. The principal evidence on the part of the plaintiffs in support of these allegations was a transcript from the records of the city's water department, from which it appeared that some 68 named water users had not been compelled to install meters, and that some 105 other customers either did not have meters, or that their meters were not in running order. If the records kept by the city gave the very information sought by the special exception, we do not see how it can be said that the city suffered any surprise by reason of the action of the court in overruling the exception, particularly in view of the fact that appellant in no way disputes the correctness of these records. Nor do we sustain the exception to the supplemental petition on the ground that the facts showing the "unavoidable accident" pleaded by the plaintiffs were not specifically set forth. The supplemental petition alleged that for a part of the period which was specified the plaintiffs had been unable to fully maintain the required depth of water in the reservoir because of unavoidable accident in the breaking down of the pumping engine. Plaintiffs were not bound to plead their evidence, and nothing in the evidence introduced on the trial is pointed out that tends to show that the breakdown in the engine was due to the plaintiffs' negligence, so that we see no material cause of complaint.

[3] A number of witnesses testified that several concerns, such as the Comanche Oilmill, the Cotton Compress, Burke-Simmons Company, and others, had connection with the water system of the city, but had no water meters installed; also that there were a number of people residing in the city whose meters were out of repair during the period covered by the forfeitures claimed. To all of this testimony objection was made because the names of such concerns and persons had not been stated in the plaintiffs' petition. But, as before shown, the failure to so name such persons could scarcely be said to have operated as a surprise to the city, or if the failure in fact operated as any material surprise, we think the city should have withdrawn its announcement of ready for trial in order to rebut the testimony, if it could do so. If there is anything in the evidence tending to contradict the testimony so offered, it has not been pointed out, and we think the proof offered was plainly in support of the defense presented in the plaintiffs' supplemental petition.

[4, 5] Nor do we think there was reversible error in permitting the witness Switzer to testify that several years previous to the trial he had made an examination and ascertained that the oilmill had connection with the city water system, and that no meter had been installed. As explained by the trial court, the testimony referred to was given in rebuttal and as tending to lessen the force of one of appellant's witnesses, who had previously testified that he was the manager of the oilmill during part of the time it was claimed by the city that plaintiffs had defaulted in their contract to keep water four feet deep in the reservoir, and that the oilmill had no connection with the water system. The witness Switzer was thereupon permitted to testify that he, together with some of the city officers, had a few years before investigated a like claim by the oilmill that it had no connection with the water system, and then found, contrary to the then contention of Coleman, the superintendent, that the oilmill did have such connection. The court explains that Switzer's testimony was admitted "for the jury to consider, if they so desired, as a circumstance bearing on the question of the testimony of Coleman (the superintendent); that at the time in question there was no such connection with the oilmill, or whether such connection, if there was one, could not possibly have escaped his attention in his superintendence the time in question as well as it did the first time." As explained by the court, the testimony objected to was relevant to the issue of the witness Coleman's credibility and the weight to be given to his testimony, as well also as tending to show that the city had failed to compel known water users to have meters.

[6] The objection to the court's charge defining "unavoidable accident," and to its action in refusing to give a special charge

containing what is claimed to be a better definition, is unsupported by the statement of any evidence tending to show any probable injury from the court's ruling. In other words, in the statement under these assignments, no evidence is pointed out showing that the variation in definition could have been materially prejudicial.

[7, 8] It is also earnestly insisted that the court should have granted a new trial on the ground of newly discovered testimony. The alleged newly discovered testimony, as stated in the assignment, is that the city had "found out by investigation from a great majority of the said 68 persons named in September, 1912, and the 105 persons named in October, 1912, that none of the said parties wasted or withdrew any water whatsoever from the said reservoir more than they would have drawn if they had been on the meters, or if the meters they were on had been in perfect running order, and defendant believes and, so believing, states here as a fact that each and all of the said persons who were not on meters, or whose meters were out of repair, will swear that they did not use or withdraw any more water than they would have used or withdrawn if they had been on meters which were in perfect running order. This defendant has further discovered the 68 persons and the 105 persons above alluded to and named in the said transcript offered in evidence are in reality made up and composed of 112 persons, and at least one-third of them either never were water consumers at all during said time, or were on meters that were in perfect running order, and will so testify upon another trial, and each and all persons who did not have meters or whose meters were out of repair will testify that no water was wasted or misused by them because of that fact." As before stated, the names of the parties who were without meters or whose meters were out of repair were principally obtained from the books of the defendant, and the city could not have been surprised in this testimony offered by appellees, notwithstanding a failure in the petition to specifically name them, or if surprised and if there was any reasonable probability of contradicting the record so offered by appellees, or of lessening its force and effect, appellant should have so suggested to the court and secured time within which to obtain the alleged newly discovered evidence. This was not done, and appellant could not take its chances, as it did, and thereafter complain. Moreover, the newly discovered testimony, as stated, is of the most uncertain and inconclusive character. In the very nature of the subject the testimony of a witness to the effect that he had or had not used more water in the absence of a meter than he would had a meter been installed is but a conclusion leading to no certain result, and, in the view that we have of the case, is moreover

immaterial, in that a determination of that particular issue was not necessary to the plaintiffs' recovery.

[9] The city of Comanche is not a large one, and it seems undisputed that a very material number of its water users were permitted by the city to use water without the installation of meters and to use water upon meters that were out of repair. There is no contention made that, at any time during the period of forfeiture claimed, the city or its inhabitants in any way suffered actual injury or discomfort because of a deficiency in the quantity of water supplied. The uncontradicted evidence further tends to show that for some of the time the failure urged amounted to but a few inches below the specified depth, so that the case is stripped of all contention except that of appellant that it should have the penalty prescribed by the contract because of the failures shown. While we have been unable to find any authority directly in point, in our opinion appellees were entitled to a judgment under the undisputed evidence. The stipulations in the contract that the city would compel "all of the water users" to instal water meters, and binding the city to keep meters that had been installed in repair, and that clause of the contract requiring the maintenance of four feet of water in the reservoir and imposing penalties, are closely correlated. The agreement to require and repair meters could have been, as it seems to us, inserted in the contract but as an assurance to appellees that by the city's performance of these stipulations they would thereby be enabled to perform their agreement to keep four feet of water in the reservoir and thereby avoid the penalties specified. The stipulations of the city referred to in their nature constituted a material inducement to and a material consideration for appellees' promise to maintain the specified quantity of water, and it can, by no means, be said that appellees would have consented to the stipulations on their part in the absence of the responsive agreement on the part of the city to require and repair meters. It is apparent that proof that any one or more water users without meters or with defective meters used more water without than with meters in good order would be very difficult, if not impossible. We may safely assume that as long as self-interest is of controlling effect patrons of a water system such as that under consideration will be less careful in the use of water for which they do not account by measure, and the contractors had the right to provide for a rule of action on the part of the city that would at once forcibly operate to prevent waste of water and to avoid a necessity of resort to the unsatisfactory and uncertain proof mentioned. This they did, and its undisputed violation by the city destroyed a very material assurance upon the faith of

which it is natural to conclude appellees made the specific agreement to maintain four feet of water in the city reservoir. This being true, regardless of testimony of a want of waste by nonmetered patrons, the city is in no attitude to insist on the clause of the contract relating to penalties, in view of its undisputed material breach of the reciprocal obligation intended as a guard against the penalties now urged in behalf of appellant.

We conclude that all assignments of error should be overruled and the judgment affirmed.

SPEER, J., not sitting.